UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————————
)
**ERIC MARTINEZ LOPEZ,**                      )
)
**Petitioner,**                      )
)          **Civil Action No.**
**v.**                      )          **21-11540-FDS**
)
**ANTONE MONIZ,**                      )
)
**Respondent.**                      )
———————————————————————)

MEMORANDUM AND ORDER ON
PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, C.J.**

This is a petition for a writ of habeas corpus. Petitioner Eric Martinez Lopez is a detainee of Immigration and Customs Enforcement who is currently located at the Plymouth County Correctional Facility. Respondent Antone Moniz is the current superintendent of that facility.[1]

Martinez Lopez is a citizen of Honduras who is in this country illegally. In 2019, he pleaded guilty in New Jersey to criminal charges for what amounted to heinous abuse of his own young child. He is also wanted for murder in Honduras, although he contends that those charges are false. Upon completion of his criminal sentence, he was taken into ICE custody on November 6, 2020. ICE made an initial custody determination to detain him under 8 U.S.C. § 1226(c), and he has been in mandatory detention since then.

Martinez Lopez has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,

---

[1] The petition also names as respondents Merrick Garland, the Attorney General of the United States, and Guy Cirrilo, the warden of the Essex County Correctional Facility, the institution from which petitioner was transferred in June 2021. As neither is a proper defendant, this memorandum will treat Moniz as the sole respondent.

alleging that he has been unreasonably detained without a bond hearing in violation of the Fifth Amendment.  For the following reasons, the petition for a writ of habeas corpus will be denied.

## I.  <u>Background</u>

### A.  <u>Factual Background</u>

The facts are drawn from the Amended Petition for Habeas Corpus.

Martinez Lopez is a 32-year-old citizen of Honduras and former police officer. (Amended Pet. ¶¶ 1; 17).  The petition alleges that in the course of his duties, he became enemies of the MS-13 gang, the Duarte drug cartel, and corrupt police officers in Honduras.  (*Id.* ¶ 17). After several attempts on his life, he fled to the United States.  (*Id.* ¶ 18).  He was admitted to the United States with a non-immigrant B-2 visa in 2014.  (*Id.* ¶ 13).  He subsequently overstayed his visa.  (*Id.*).  Up to 2018, he lived in New Jersey with his partner and four children.  (*Id.*).

In 2017, Martinez Lopez learned that a prosecutor filed murder charges against him in Honduras—a charge that he insists is false and the result of a bribe by the drug cartel.  (*Id.* ¶ 19). The alleged murder took place on October 19, 2014, just days before he was admitted to the United States.  (Amended Pet. Ex. 6 at 4).

The petition alleges that Martinez Lopez and his family have received threats from Honduras after relocating to the United States.  (Amended Pet. ¶ 19).  For example, he alleges that his mother received a phone call from an unknown Honduran number on August 29, 2021; shortly thereafter, she received a text message from the same number with two videos of men graphically killing and mutilating a dog.  (*Id.*).  The videos were purportedly accompanied by a text message that was "a message for Eric."  (*Id.*).  The videos also featured a written message on a piece of cardboard stating, "This is coming for you, Martines Lopes [sic]."  (*Id.*).

On February 15, 2018, Martinez Lopez was arrested in Atlantic County, New Jersey, on a seven-count indictment charging him with committing criminal acts against his own young child.

Specifically, it charged him with endangerment or abuse of a child by caretaker; criminal restraint; two counts of aggravated assault with the intent to cause significant bodily harm; one count of aggravated assault with a deadly weapon; sexual assault of a victim younger than thirteen but older than four years old; and unlawful possession of a weapon. (*Id.* ¶ 20; Judgment of Conviction). He pleaded guilty on October 17, 2019, to a single count of aggravated assault in the second degree and received a sentence of four years. (*Id.*). It is that criminal conviction that triggered ICE's initial custody determination under 8 U.S.C. § 1226(c).

      **B.**    <u>**Procedural Background**</u>

          **1.**    <u>**Immigration Proceedings**</u>

On September 2, 2020, ICE issued Martinez Lopez a Notice to Appear. (Amended Pet. ¶ 21; Notice to Appear). On October 13, 2020, he appeared for an initial master-calendar hearing before an immigration judge in Newark, New Jersey. (Amended Pet. ¶ 23). The IJ adjourned the master-calendar hearing so that his new counsel could prepare. (*Id.*).

On November 6, 2020, upon the completion of his state criminal sentence, he was taken into mandatory detention pursuant to 8 U.S.C. § 1226(c) at the Essex County Correctional Facility. (Amended Pet. Ex. 4). The master-calendar hearing was then postponed three more times, twice because he was subject to COVID-19 quarantine and once due to a court closure. (Amended Pet. ¶ 23). He ultimately appeared at the master-calendar hearing on January 7, 2021. (*Id.*).

On January 14, 2021, Martinez Lopez submitted applications for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture. (*Id.* ¶ 24; Amended Pet. Ex. 2). Due to another court closure (presumably related to COVID-19) and his own motion to continue, his individual hearing before the immigration judge was delayed until April 28, 2021. (Amended Pet. ¶ 24).

Martinez Lopez appeared for his individual hearing by video teleconference before Immigration Judge Pallavi Shirole in New Jersey.  (Amended Pet. Ex. 2 at 6-7).  At the hearing, his former counsel, Joan C. Orejuela, conceded that he was only eligible for deferral of removal under CAT.  (*Id.* at 7).[2]  Martinez Lopez testified in support of his application for deferral of removal.  (*Id.*).  Immigration Judge Shirole issued an oral decision at the conclusion of the hearing finding his testimony not credible and denying his application.  (*Id.*).

On May 25, 2021, Martinez Lopez filed a notice of appeal to the Board of Immigration Appeals.  (Amended Pet. ¶ 25).  He filed a supporting brief on August 5, 2021, after he was granted a three-week extension.  (*Id.*).  On appeal, he argued that the immigration judge erred in making her adverse-credibility finding and denying his application for deferral of removal under CAT.  (Amended Pet. Ex. 2 at 7).

On September 22, 2021, Martinez Lopez filed a motion to remand his merits proceedings to the immigration judge for reconsideration of his application.  (Amended Pet. ¶ 25; Amended Pet. Ex. 6).  He alleges that the threatening videos sent to his mother on August 29, 2021, were previously unavailable and are material because they bolster his credibility and support the likelihood that he would be tortured if he returned to Honduras.  (Amended Pet. Ex. 6 at 9-10).  He further alleges that his former attorney, Ms. Orejuela, provided ineffective assistance of counsel by failing to (1) meet with him; (2) prepare him for direct and cross examination at his hearing before the immigration judge; (3) diligently file his application and corresponding exhibits; (4) file various pieces of "important" evidence in support of his claim; and (5) "make a single legal argument" on his behalf.  (*Id.* at 12-16).

---

[2] Martinez Lopez does not contest his ineligibility for asylum or withholding of removal under the Immigration and Nationality Act.  (Amended Pet. Ex. 2 at 7, n.6).

2.   **Habeas Proceedings**

On June 28, 2021, Martinez Lopez filed a petition for a writ of habeas corpus in the United States District Court for the District of New Jersey and moved for a temporary restraining order to enjoin his transfer from the Essex County Correctional Facility.  (Amended Pet. ¶ 26). The court denied the motion for a temporary restraining order on June 29, 2021.  (*Id.*).

Martinez Lopez was subsequently transferred to the Plymouth County Correctional Facility.  (*Id.*).  On September 16, 2021, the matter was transferred to this Court at the parties' request.  He filed an amended petition on September 30, 2021, with the Court's leave.  On October 14, 2021, respondent Antone Moniz filed a response.  The Court held a hearing on December 8, 2021, and took the matter under advisement.

II.   **Standard of Review**

Title 8, U.S.C. § 1226 governs the apprehension and detention of aliens during removal proceedings.  Although the government may generally release an alien on conditional parole or bond while his removability decision is pending, section 1226(c) "carves out a statutory category of aliens who may *not* be released."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Pursuant to section 1226(c), the Attorney General is required to take into custody any alien who is inadmissible or deportable based on a conviction for "certain crimes of moral turpitude, controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with terrorism."  *Gordon v. Lynch*, 842 F.3d 66, 67 n.1 (1st Cir. 2016); 8 U.S.C. § 1226(c).  The Attorney General may release such an alien only if he decides "that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."  § 1226(c)(2).

The statute does not provide a right to a bond hearing.  However, mandatory detention

under § 1226(c) without a bond hearing can violate due process "when it becomes unreasonably prolonged in relation to its purpose in ensuring the removal of deportable criminal aliens." *Reid v. Donelan*, 390 F. Supp. 3d 201, 215 (D. Mass. 2019). An alien subject to mandatory detention under § 1226(c) may bring a petition for habeas corpus if he believes his detention is unreasonably prolonged in violation of due process. *Id.* at 209-10. "[D]ue process applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 29 (1st Cir. 2021) (internal citations and quotation marks omitted).

**III.   Analysis**

The Court begins by noting that the procedural history of this case intersects in complicated ways with the *Reid* case. That case began in 2014 when Judge Ponsor of this District granted a habeas petition, deeming petitioner's mandatory detention without an individualized bond hearing unreasonable. *Reid v. Donelan*, 991 F. Supp. 2d 275, 276-78 (D. Mass. 2014) ("*Reid I*"). The court held that 8 U.S.C. § 1226(c) should be read as requiring a bond hearing after no more than six months of detention and, that in any event, Reid's unique circumstances required such a hearing. *Id.* at 279, 281. Reid subsequently filed a motion for class certification, which was granted. *Reid v. Donelan*, 297 F.R.D. 185 (D. Mass. 2014).

On appeal, the First Circuit reversed the bright-line rule but affirmed the alternative holding that § 1226(c) required an individualized bond hearing for Reid. *Reid v. Donelan*, 819 F.3d 486, 496, 501 (1st Cir. 2016), *withdrawn*, 2018 WL 4000993 (1st Cir. May 11, 2018) ("*Reid II*"). After the Supreme Court issued its decision in *Jennings v. Rodriguez*, the First Circuit withdrew its 2016 opinion, vacated the judgment, and remanded for reconsideration of the class certification order. *Reid v. Donelan*, 2018 WL 4000993 (1st Cir. May 11, 2018). However, it affirmed the district court's judgment as to Reid himself. *Id.*

6

Following remand, the case was reassigned to Judge Saris, who determined that
continued certification of the class was proper based on the common question of "whether the
Due Process Clause or Excessive Bail Clause requires that they at least have the chance to plead
their case after six months at an individualized bond or reasonableness hearing." *Reid v.
Donelan*, 390 F. Supp. 3d 201, 211 (D. Mass. 2019) ("*Reid III*").  The class included "[a]ll
individuals who are or will be detained within the Commonwealth of Massachusetts or the State
of New Hampshire pursuant to 8 U.S.C. § 1226(c) for over six months and have not been
afforded an individualized bond or reasonableness hearing." *Id.* at 209.  After cross-motions for
summary judgment, the court held that "mandatory detention under § 1226(c) without a bond
hearing violates the Due Process Clause when it becomes unreasonably prolonged in relation to
its purpose in ensuring the removal of deportable criminal aliens." *Id.* at 215.  It further held that
to determine when mandatory detention becomes unreasonably prolonged, the following
nonexclusive factors should be considered:

> the total length of the detention; the foreseeability of proceedings concluding in
> the near future (or the likely duration of future detention); the period of the
> detention compared to the criminal sentence; the promptness (or delay) of the
> immigration authorities or the detainee; and the likelihood that the proceedings
> will culminate in a final removal order.

*Id.* at 219 (quoting *Reid II*, 819 F.3d at 500).  The court also concluded that "detention is likely
to be unreasonable if it lasts for more than one year during removal proceedings before the
agency, excluding any delays due to the alien's dilatory tactics." *Id.*

However, earlier this year, the First Circuit affirmed in part, vacated in part, and
remanded *Reid*.  *Reid v. Donelan*, 17 F.4th 1, 12 (1st Cir. 2021) ("*Reid IV*").[3]  It held that the

---

[3] The First Circuit affirmed only as to the "judgment against the class rejecting the claim that persons
detained for six months under section 1226(c) are automatically entitled to a hearing before an IJ that might lead to
their release on bond pending the conclusion of removal proceedings." *Reid IV*, 17 F.4th at 12.

district court impermissibly issued declaratory and injunctive relief, and that the district court erred in using the "class as a bootstrap to then adjudicate, on a class-wide basis, claims that hinge on the individual circumstances of each class member." *Id.* at 9-12.  At the end of the opinion, the court clarified that "[n]othing in this opinion precludes any class member from pursuing a claim that he or she is entitled to a bond hearing or to release based on his or her individual circumstances." *Id.* at 12.

The First Circuit then granted an extension for petitioners in *Reid IV* to file a petition for rehearing.  As a result, the formal mandate will not issue until at least March 10, 2022.

This matter was assigned to the undersigned judge, not to Judge Saris.  As a technical matter, however, because the mandate has not issued, the class certification order remains in place, and Martinez Lopez is a member of the class.  Nonetheless, under the circumstances, the Court will not transfer the matter to Judge Saris, but will resolve the matter on the merits. Furthermore, and in any event, the parties do not dispute that the *Reid* factors are applicable here.

### A.    <u>Length of Detention</u>

The most important factor in determining whether an alien's mandatory detention without a bond hearing is unreasonable is the total length of the detention.  *Reid III,* 390 F. Supp. 3d at 219.  Although a one-year period of detention is not a "bright line," a detention is "likely to be unreasonable if it lasts for more than one year during removal proceedings before the agency, excluding any delays due to the alien's dilatory tactics." *Id.* at 219-20.

Here, petitioner has been detained by ICE since November 6, 2020.  As of the date of this opinion, petitioner will have been detained for more than thirteen months.  He has requested three extensions of time related to his proceedings, including a three-week continuance to allow his new counsel time to prepare in October 2020; a five-week continuance in March 2021; and a three-week extension of time in July 2021 to file his appeal brief.  Those extensions total

approximately eleven weeks, which is a substantial portion of the period of delay.  Nonetheless, his conduct in requesting those extensions was not unduly dilatory.  *See De La Cruz Hernandez v. Moniz*, 2021 WL 3174915, at *3 (D. Mass. May 24, 2021) (finding that two-month continuance was not dilatory); *Campbell v. Moniz*, 2020 WL 1953611, at *3 (D. Mass. Apr. 23, 2020) (finding that petitioner was not dilatory even though "the case was reset for short periods of time to allow Petitioner to obtain counsel and for his attorney to prepare his applications for relief").

There were also delays attributable to COVID-19, including mandatory quarantines and court closures.  *See Dos Santos v. Moniz*, 2021 WL 3361882, at *3 (D. Mass. May 18, 2021) (reasoning that at least some portion of delay, including continuances exceeding four months, "was likely inevitable due to the impact of the COVID-19 pandemic on the courts"); *De La Cruz Hernandez*, 2021 WL 3174915, at *3.

Petitioner's appeal and motion to remand were also not dilatory tactics.  *See Reid II*, 819 F.3d at 500 n.4 (stating that "there is a difference between 'dilatory tactics' and the exercise of an alien's rights to appeal"); *Decarvalho v. Souza*, 2020 WL 3498270, at *2-3 (D. Mass. June 29, 2020) (finding that petitioner did not engage in dilatory tactics when he filed two appeals with BIA); *Da Graca v. Souza*, 2020 WL 2616263, at *3 (D. Mass. May 22, 2020) (finding that petitioner's BIA appeal was not dilatory).

In sum, a portion of the delay was at petitioner's request; a portion was due to the pandemic, and therefore outside the control of the parties; and another was due to petitioner's exercise of his appellate rights.  Nonetheless, his detention has exceeded one year, and is therefore according to *Reid*, presumptively unreasonable.  However, that factor alone is not dispositive.  Habeas relief may be denied when the remaining factors favor the government.  *See*

9

*Dos Santos*, 2021 WL 3361882, at *4 (finding that petitioner was not entitled to bond hearing notwithstanding detention exceeding sixteen months). Thus, the Court will consider the remaining *Reid* factors.

### B.    Foreseeability of Proceedings Concluding in Near Future

The second factor the Court must consider is whether it is foreseeable that proceedings will conclude in the near future. Here, petitioner's BIA appeal was filed on May 25, 2021. He filed a supporting brief on August 5, 2021, after he was granted a three-week extension. At this stage, it is foreseeable that the BIA will issue a decision on petitioner's appeal in the near future. *See Lewis v. Souza*, 2020 WL 2543156, at *3 (D. Mass. May 19, 2020) (stating that when "petitioner's appeal is at an advanced stage, with briefing submitted" it weighs against finding of unreasonableness); *see also Dos Santos*, 2021 WL 3361882, at *4 (noting that fully-briefed appeal pending before BIA for three months was "nearing resolution").

Petitioner also filed a motion to remand on September 22, 2021. The government filed its opposition the following day. Although petitioner contends that his case will likely be remanded because of his "meritorious arguments," that is entirely speculative. Any appeal of the BIA's decision to the Court of Appeals is also speculative. *Reid III* explicitly did not take a position on this issue. 390 F. Supp. 3d at 219 n.4 (noting that court did not take position on issue of whether "the period of time while a petition for review with a circuit court is pending should factor into the reasonableness analysis"). And, as the government points out, this "would require both a petition for review with the Third Circuit as well as the Third Circuit granting a motion to stay over an objection from the United States Department of Justice." (Response at 9).

Ultimately, both the BIA appeal and motion to remand are fully briefed, and it is readily foreseeable that proceedings will conclude in the near future. The second factor therefore weighs in favor of the government.

### C.      Period of Detention Compared to Criminal Sentence

The third factor compares the length of detention with the length of petitioner's criminal sentence.  The length of detention by immigration authorities may become unreasonable when it is grossly disproportionate to the length of the detainee's criminal sentence.  *See Lewis*, 2020 WL 2543156, at *3 (finding that nine and a half months in detention was not "grossly disproportionate to his six-month term of incarceration, particularly in light of the multiple suspended sentences in his record"); *Campbell*, 2020 WL 2129594, at *5-6 (holding that immigration detentions exceeding criminal sentences by up to six months "are not so grossly out of proportion as to outweigh the other relevant factors").[4]

Here, petitioner's criminal sentence—which was four years, of which approximately thirteen months appear to have been served—is approximately the same length of his period of administrative detention.  The Court is therefore unpersuaded that the length of petitioner's detention is grossly disproportionate to his criminal sentence.

### D.      Promptness of Immigration Authorities and Detainee

The fourth factor is the promptness or delay of the immigration authorities and the detainee.  The parties dispute whether this is a relevant factor to consider, given that petitioner's detention has now exceeded one year.  The government contends that the promptness of the immigration authorities and the detainee may be properly considered.  Petitioner disagrees, citing to a portion of *Reid III* which contemplates that an alien's unique circumstances could "render mandatory detention of less than one year unreasonable if the Government unreasonably delays or the case languishes on a docket."  390 F. Supp. 3d at 220.  From this quotation, petitioner

---

[4] As petitioner notes, "this factor of the *Reid* analysis compares the period of ICE detention with the actual time spen[t] in incarceration as a result of the underlying criminal conviction, not the length of a related suspended sentence."  *Da Graca*, 2020 WL 2616263, at *3 n.1.

infers that an analysis of the government's delay is unnecessary because he has been detained for more than one year, not less.  *Compare Perez v. Souza*, 2020 WL 1514606, at *3-4 (D. Mass. Mar. 30, 2020) (bypassing discussion of government delay where detention was nearing one year) *with Dos Santos*, 2021 WL 3361882, at *4 (noting that "the Government has not unreasonably delayed Petitioner's proceedings, nor has his case languished on a docket" even though detention exceeded one year).

Although it appears that the fourth factor has not always been consistently applied, the Court will consider the issue of government-caused delay.[5]  Here, petitioner's proceedings have moved along promptly.  The government has not sought any continuances or extensions during the pendency of the immigration proceedings, and as noted, substantial delays have been due to the COVID-19 pandemic, court closures, and continuances filed by petitioner.  There is no indication that immigration proceedings have simply languished on the docket.

Although the Court is mindful that "detention can still be unreasonably prolonged even where the government did not delay proceedings," *see Neziri v. Johnson*, 187 F. Supp. 3d 211, 216 (D. Mass. 2016), it is nonetheless significant that the government appears to have been reasonably diligent here.

### E.    Likelihood That Proceedings Will Culminate in Final Removal Order

The final *Reid* factor considers whether it is likely that proceedings will culminate in a final removal order.  Courts generally look to the prior ruling of the immigration judge to assess the likelihood of final removal.  *See Bonnet v. Smith*, 2019 WL 11029146, at *4 (D. Mass. July 23, 2019) (reasoning that "there is a significant likelihood the proceedings will culminate in a

---

[5] It is notable that the court in *Reid I* considered "the prompt action of immigration authorities," even though Reid himself had been detained for longer than one year.  991 F. Supp. 2d at 281-82.  Reid's entitlement to a bond hearing based on these factors was also affirmed by the First Circuit.

final removal order against Petitioner since the IJ has already rejected his CAT application");
*Goncalves v. Moniz*, 2020 WL 2198526, at *3 (D. Mass. May 6, 2020) (stating that "the Court
cannot say that Petitioner is likely to succeed on appeal.  The IJ ordered Petitioner's deportation
after careful consideration of the positive and negative equities in Petitioner's case"); *Tahil v.
Moniz*, 2020 WL 2560967, at *3 (D. Mass. May 20, 2020) (explaining that IJ's decision was
"Court's best guide in determining the likelihood that the proceedings will conclude in a final
removal order"); *Lewis*, 2020 WL 2543156, at *3 (same).

Here, the immigration judge orally denied petitioner's application at the conclusion of his
merits hearing on April 28, 2021.  The immigration judge not only found petitioner not credible
for multiple reasons, but also concluded that even if he were credible, he failed to meet his
burden to show that it was more likely than not that he would be tortured if returned to
Honduras.  On May 25, 2021, petitioner filed a notice of appeal to the BIA, arguing that the
immigration judge erred in making her adverse credibility finding and denying his application
for deferral of removal under CAT.

Petitioner also moved to remand his merits proceedings to the immigration judge on two
grounds:  first, because threatening videos sent to his mother on August 29, 2021, were
previously unavailable and are material evidence supporting his contention that he would be
tortured if returned to Honduras; and second, because his former attorney provided ineffective
assistance of counsel.

Petitioner contends that the strength of his appeal and motion to remand makes a final
removal order unlikely.  The government contests these arguments, as does petitioner's prior
lawyer, as to the claim for ineffective assistance of counsel.  The Court finds it prudent to look to
the immigration judge's decision as the "best guide in determining the likelihood that the

proceedings will conclude in a final removal order." *Tahil*, 2020 WL 2560967, at *3. Thus, the final *Reid* factor weighs in favor of the government because it is likely that these proceedings will culminate in a final removal order.

### F.    Additional Factors

Beyond the *Reid* factors, petitioner urges the Court to consider three additional factors that make his continued detention unreasonable:  first, the undue hardship that petitioner's detention poses on his family; second, the conditions of his detention at Plymouth; and third, the difficulties arising out of his detention during the COVID-19 pandemic.

Petitioner first contends that his detention places an undue hardship on his family.  The government responds that "Petitioner's argument should be flatly rejected in light of the horrendous nature of his crime against his young child, which also provides the government with a significant interest in his continued detention." (Response at 14).  Whether family hardship may be properly considered is unclear; it is likely that all, or virtually all, immigration detention orders place a burden on the family of the alien.  In any event, under the circumstances, and even assuming it is an appropriate issue to consider, the Court assigns no weight to that factor here.

Petitioner's second argument is that the conditions of his detention at Plymouth are more akin to criminal incarceration than civil detention.  Again, it is unclear whether this Court may properly consider the conditions of confinement.  However, even assuming it is relevant, the government has supplied a declaration from Joseph D. McDonald, the Sheriff of Plymouth County, about the conditions of petitioner's detention.  McDonald's declaration states that immigration detainees are housed separately from pretrial detainees and convicted prisoners and receive certain extra privileges, amenities, and services.  (Response Ex. 2).  Thus, the conditions of petitioner's detention do not merit a finding of unreasonableness.

Finally, petitioner urges the Court to consider the impacts of COVID-19.  While COVID-

19 is undoubtedly difficult for all detainees, he does not assert that he has a preexisting condition or is particularly vulnerable to COVID-19.  *See Da Graca*, 2020 WL 2616263, at *4 (stating that the court "may weigh the impact of COVID-19 in deciding whether the proceedings are unreasonably prolonged" and noting that petitioner had diabetes and heart condition); *Tahil*, 2020 WL 2560967, at *3 (finding that impact of COVID-19 did not weigh in petitioner's favor when he did not show he suffered from a preexisting condition known to increase the risk of severe illness from COVID-19).  He also has not indicated whether he is vaccinated.  And even if he were particularly susceptible to COVID-19, the COVID-19 pandemic would not "independently render [p]etitioner's detention excessive in relation to legitimate governmental objectives."  *Omar v. Moniz*, 2020 WL 2560988, at *3 (D. Mass. May 20, 2020).

### G.    Conclusion

Although petitioner's detention has exceeded one year, the other factors, taken as a whole, overwhelmingly favor the government and are sufficient to overcome any presumption of unreasonableness.  *See Dos Santos*, 2021 WL 3361882, at *3-4 (holding that petitioner was not entitled to bond hearing despite detention exceeding sixteen months because his BIA appeal was "fully briefed," his time spent in detention was not "grossly disproportionate" to period of incarceration, government had not "unreasonably delayed" proceedings, and IJ denied application for withholding of removal, which was "best guide available" about likelihood of final removal order).

## IV.    Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is DENIED without prejudice.

**So Ordered.**

                                        /s/ F. Dennis Saylor IV
                                        F. Dennis Saylor IV
Dated: December 22, 2021                Chief Judge, United States District Court